Lemoyne Borough Annexation Case.

Argued March 9, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (HIRT, J., absent).

*Edwin M. Blumenthal* and *James D. Flower*, with them *Addison M. Bowman, Jr.*, for appellant.

*Wilhelm E. Shissler*, with him *Ralph A. Sheetz, George B. Stuart, Stuart & Stuart, J. Boyd Landis* and *Landis & McIntosh*, for appellees.

OPINION BY ERVIN, J., July 13, 1954:

This is an appeal of the Borough of Lemoyne from an order of the Court of Quarter Sessions of Cumberland County declaring Ordinance No. 242 of the Borough of Lemoyne invalid.

The complainants in the court below raised several questions attacking the validity of Ordinance No. 242. The lower court declared this ordinance to be invalid for one reason and deemed it unnecessary to pass upon the other objections. On appeal to this Court four additional objections raised in the court below but not disposed of by that court were argued. All other objections were abandoned. We will dispose of all objectons argued here as they involve questions of law only.

Our review on appeal of cases of this type is a broad certiorari. *Salisbury Twp. Annexation Case*, 172 Pa. Superior Ct. 262, 270, 94 A. 2d 143.

The first and only question considered by the lower court was whether a borough ordinance annexing land from an adjacent township of the second class, upon petition of a majority of the freeholders in the land annexed, was invalid because prior to the enactment of the ordinance the court of quarter sessions had directed that the question of changing the class of the township from the second to the first be submitted to the electors, where the vote in favor of the change was not given and the change did not become effective until after the enactment of the annexation ordinance. The lower court held that the ordinance was invalid for this reason. The Act of 1927, May 4, P. L. 519, Art. IV, Sec. 425, as amended, 53 PS §12461, provides that "Any borough may, by ordinance, annex adjacent land situate in a township of the second class in the same or any adjoining county, upon petition. . . . The petition shall be signed by a majority in number of all of the freeholders of the territory to be annexed." Sec. 426 of that act, 53 PS §12462, provides that "A certified copy of any ordinance, adopted together with a description, and a plot showing the courses and distances of the boundaries of the borough before and after such proposed annexation, shall be filed in the court of quarter sessions of the county . . . . A notice of such filing shall also be filed in the office of the county board of elections of the proper county. Thereupon the territory proposed to be annexed shall be a part of the borough; except when any ordinance and plot are filed in the office of the clerk of the court of quarter sessions within two months of any general, municipal or primary election, in which case the property proposed to be annexed shall not become a part

of the borough until the day succeeding such election."
The First Class Township Code of May 27, 1949, P. L.
1955, Art. II, Sec. 207, 53 §19092-207, provides inter
alia, as follows: "At the first general or municipal
election occurring, at least ninety days after the ascer-
tainment . . . that any township of the second class has
a population of at least three hundred inhabitants to
the square mile, and after a petition signed by at least
five per centum of the registered voters of the township
has been filed in the quarter sessions court, the ques-
tion whether such township of the second class shall
become a township of the first class shall be submitted
to the voters of the township . . . ." Sec. 208 of that act
provides: "If a majority of the votes cast at any such
election shall be in favor of becoming a township of
the first class, the government of the township of the
first class shall be organized and become operative on
the first Monday of January next succeeding such elec-
tion, at which time the terms of the officers of the
township of the second class shall cease and termi-
nate . . . ." It is provided in Sec. 225 of said act that
". . . the court of quarter sessions shall appoint five
commissioners, and the other elective officers to which
the township is entitled, and fix the polling place or
places in such township. The officers so appointed
shall hold their offices from the first Monday of Janu-
ary following the election creating such township . . . ."

On February 5, 1952 the Court of Quarter Sessions
of Cumberland County, pursuant to a proper petition,
filed an order submitting to the voters of East Penns-
boro Township the question whether the township
should become a township of the first class. On April
28, 1952 Ordinance No. 242 annexing part of East
Pennsboro Township was enacted by the borough coun-
cil and approved by the burgess. On May 12, 1952
the ordinance was first advertised in the Daily Local

News, a newspaper published in the Borough of Mechanicsburg, Cumberland County, Pennsylvania, which newspaper was one of general circulation in the Borough of Lemoyne. On May 13, 1952 a certified copy of the ordinance was filed in the office of the clerk of quarter sessions. On this date the West Shore Times, a newspaper of general circulation, was published in the Borough of Lemoyne. Following the appeals filed by the complainants the ordinance was readvertised on June 12, 1952 in the West Shore Times and on June 13, 1952 a certified copy of the ordinance was refiled in the office of the clerk of quarter sessions. On November 4, 1952 the vote on the question was 1950 to 295 in favor of the change of classification. East Pennsboro was organized as a first class township on or about January 1, 1953.

Annexation from a township of the first class is governed by The First Class Township Law and requires, inter alia, the approval of a majority of all of the persons voting on such question in the entire township, as well as a majority of all persons voting on that question in the annexing city or borough. Act of July 2, 1937, P. L. 2803, as amended, 53 PS §19092-3601. Therefore, it appears that the annexation of first class township territory by a borough requires the approval of a majority of the electors of the township voting on the question, whereas, in the case of an annexation of territory of a township of the second class, the petitioners need only be freeholders of the territory sought to be annexed and need not be electors. The lower court in its opinion stated the question to be ". . . whether the annexation ordinance is invalid because the Court of Quarter Sessions of Cumberland County had directed that the question of a change in the township classification be submitted to the electorate of the township, before the adoption of the ordinance." That

court also felt that the two acts under consideration, as applied to this situation, relate to the same subject and are pari materia and must be considered together as one law. The lower court also stated that "A proper construction of the two enactments requires us to hold that no ordinance may be enacted by any borough, annexing territory of a township of the second class, after an order has been entered directing that the question of a change of classification of the township to one of the first class be submitted to the electors of the said township. Any annexation ordinance enacted within said period is invalid and must be set aside."

. With this conclusion we cannot agree.

The learned judge of the lower court did not have the benefit of the opinion of the Supreme Court of Pennsylvania filed June 26, 1953, in *Lancaster City Annex. Case (No. 2)*, 374 Pa. 537, 98 A. 2d 29, which we believe rules this case.

The record in the lower court in the *Lancaster* case will reveal that on July 30, 1952 the Court of Quarter Sessions of Lancaster County, pursuant to a proper petition, filed an order submitting to the voters of Manheim Township, a second class township, the question whether the township should become a township of the first class. On October 28, 1952 the petition for annexation was introduced in the council of the City of Lancaster. On Tuesday, November 4, 1952, the annexation ordinance was adopted and on the same date a majority of the voters of Manheim Township voted to become a first class township. On December 3, 1952 the appeal from said ordinance was filed in the Quarter Sessions Court of Lancaster County. On February 26, 1953 the Quarter Sessions Court of Lancaster County allowed the commissioners of the Township of Manheim, now a first class township, and others to reopen the record and become parties of rec-

ord. A supplemental hearing was held and the change of status of the Township of Manheim from second to first class was shown. Mr. Justice MUSMANNO, at pages 540, 541, stated: "The appellants now contend that the advancement of Manheim Township to the category of first-class townships during the pendency of the appeal invalidated the annexation, since the procedure, attendant upon annexation of land from first-class townships, had not been observed . . . . The proceedings here under consideration were initiated prior to the promotion of Manheim Township to first class status. Certain rights, therefore, had accrued to the taxable inhabitants and owners of the territory annexed. And under the provisions of the Act of May 27, 1949, P. L. 1955, section 1, (53 PS §19092-108) these rights cannot be divested: 'Whenever any township of the second class is designated a township of the first class . . . all liabilities incurred, rights accrued or vested, obligations issued or contracted, and all suits and prosecutions pending or to be instituted to enforce any right or penalty accrued or punish any offense committed, prior to such change of class, and all ordinances, resolutions, rules and regulations shall continue with the same force and effect as if no such change had been made.' The legality of an ordinance is determined as of the date of its enactment, and as the passage of the annexation ordinance predated the change of the township's status, its validity remained unimpaired."

In the *Lancaster* case the annexation ordinance was adopted on November 4, 1952, which was the day when the voters of Manheim Township voted to become a first class township. In the present case the annexation ordinance was enacted and approved on April 28, 1952, more than six months prior to the day when voters of the Township of East Pennsboro voted to be-

come a first class township. In both cases the order of the quarter sessions court submitting to the voters of the township the question whether the township should become a township of the first class was entered prior to the filing of the petition for annexation. The change in status of the township from second to first class, under the express language of the statutory provision, did not occur until the first Monday of January succeeding the election. The First Class Township Law did not become effective as to the territory of East Pennsboro Township until the first Monday of January succeeding the election and, therefore, was not applicable to the annexation proceedings, which occurred theretofore. The Second Class Township Law remained in effect as to the land involved in this proceedings. To the same effect see the opinion of President Judge RHODES, in *Salisbury Twp. Annexation Case*, 172 Pa. Superior Ct. 262, 94 A. 2d 143.

The court below stated a hypothetical case wherein the electors of the area of a township to be annexed might be disfranchised by nonresident freeholders of the area petitioning for annexation. The stipulation of facts did not indicate that such were the facts in the instant case. If we were to indulge in surmise, we would suppose that the population per acre of the part of the township not annexed would be increased rather than decreased by the annexation in this case. Should such a situation as that imagined by the lower court arise, it could be considered at that time under the provisions of The Borough Code which permit the lower court on an appeal from an ordinance of the borough not only to look into the validity of the ordinance but also into its propriety.

We will now consider the other questions argued on this appeal but not considered by the lower court in its disposition of the case.

The annexation ordinance was not advertised in the Cumberland Law Journal, which had been designated by the rules of court of Cumberland County for the publication of legal notices and advertisements required by law to be published in a law journal. The Newspaper Advertising Act in effect at the time of the passage of the annexation ordinance provides: "Hereafter in all counties of the Commonwealth, every *notice* or *advertisement* required by law or rules of court to be published in one or more newspapers of general circulation, unless dispensed with by special order of court, shall also be published in the legal newspaper . . . designated by rules of court for the publication of court or other legal notices, if such newspaper exists . . . . *Provided, That nothing herein contained shall be construed to require the publication in such legal newspapers of municipal ordinances . . . .*" (Emphasis added) Act of May 3, 1909, P. L. 424, as amended, 45 PS §39. It will be noted that municipal ordinances are expressly excluded in the above enactment. It is argued by appellees, however, that Sec. 109 of The Borough Code, in the following language, requires publication in the legal journal: "Wherever, in any of the provisions of this act, *notice* is required to be given in one newspaper in the county, *such notice* shall be published in a newspaper of general circulation published within the limits of the borough affected or, if none is published therein, then in a newspaper of general circulation of the county or adjacent county circulating in such borough and, *such notice* shall also be published in the legal journal, if any, designated by the rules of court for the publication of legal notices and advertisements *when such notice refers to any proceeding in any court* or the holding of elections for the increase of indebtedness or the sale of bonds, unless such publication is dispensed with by

special order of the court." (Emphasis added) Act of May 4, 1927, P. L. 519, Art. I, Sec. 109, as amended, 53 PS §12230. The advertisement of *ordinances* is provided for in Sec. 1006 of The Borough Code in the following language: "It shall be the duty of the borough council . . . IV. Except where otherwise in this act provided, to publish every *ordinance* or *resolution* of a legislative character once in one newspaper of general circulation in the borough." Act of May 4, 1927, P. L. 519, Art. X, Sec. 1006, as amended, 53 PS §12896. The appellees argue that as it is a prerequisite of the effectiveness of an annexation ordinance that the same shall be filed in the office of the clerk of the court of quarter sessions, it follows that such an ordinance refers to a proceeding in court and, therefore, it must be published in the legal journal. The fallacy of this argument is apparent when one examines the annexation ordinance. We have done so and find no reference in the ordinance to any hearing or proceeding in court. The reason for requiring the annexation ordinance to be filed in the quarter sessions court and requiring notice of such filing to be given to the county board of elections we believe is to inform the county officials of the change of status of the territory annexed. This is necessary for many reasons. The election officials must know of the change so that the election paraphernalia will reflect the change. The tax assessment officials must be informed of the change so that the tax records will show it. The matter will never get into court unless a complaint is filed under a general provision of the law providing for the filing of complaints to test the legality of any ordinance within thirty days after the ordinance takes effect. This did not become a proceeding in court upon the filing of the annexation ordinance in the office of the court of quarter sessions. It only became a proceeding in court when the com-

plaint questioning the legality of the ordinance was filed in court. We do not believe the Legislature ever intended that Sec. 109 should apply to the advertisement of ordinances. That section relates to the publication of notices. The advertisement of ordinances is governed by Sec. 1006. Sec. 109 of the Code was intended to make more specific the manner in which notices, as distinct from ordinances, of the borough should be advertised whenever other sections of the Code provided for advertising "in one newspaper in the county." Sec. 1008 provides for the recording of ordinances in the following language: "No ordinance, or resolution of a legislative character, in the nature of an ordinance, shall be considered in force until the same is recorded in the ordinance book of the borough and has been advertised as provided *in this article . . . ."* (Emphasis added) Secs. 1006 and 1008 are in Art. X. Sec. 109 is in Art. I. It would seem clear, therefore, that the legislature intended that ordinances should be advertised in accordance with Sec. 1006 and not Sec. 109.

Two other arguments of the appellees may be disposed of at one time. The appellees contend that the failure (1) to file proofs of publication of the annexation ordinance and (2) a copy of the petition of the freeholders, in the quarter sessions court, invalidates the ordinance. The answer to this contention is that nothing in the procedure relative to annexation in The Borough Code requires the filing of these two papers. The procedure has been more fully set out hereinbefore and will not be repeated. It was argued that the Newspaper Advertising Act of 1929, May 16, P. L. 1784, 45 PS §7, requires the filing of proof of publication of the ordinance. We have already answered this argument and merely repeat that the annexation ordinance did not relate to a notice of a

court proceeding. There is a presumption that the borough authorities have complied with all the legal formalities. Where a statute sets out precisely what must be filed, all other matters are necessarily excluded. It is a well known principle of interpretation that a mention of a number of things in a statute implies an exclusion of other things not mentioned ("expressio unius est exclusio alterius"). *Com. ex rel. Maurer v. Witkin et al.,* 344 Pa. 191, 196, 25 A. 2d 317. The proof of publication and the petition for annexation are undoubtedly on file in the office of the clerk of the council, where they belong and where any taxpayers may see them.

It was finally contended that the advertisement of the ordinance in the Mechanicsburg Daily Local News was not a compliance with the acts of assembly pertaining to the publication of the annexation ordinance. The ordinance was first advertised on May 12, 1952 in the Daily Local News, a newspaper published in the Borough of Mechanicsburg, Cumberland County, Pennsylvania, which newspaper was one of general circulation in the Borough of Lemoyne, and was readvertised in the West Shore Times, a newspaper of general circulation in the Borough of Lemoyne and also published in said Borough, on June 12, 1952, and thereafter on June 13, 1952 a certified copy of the ordinance was refiled in the office of the clerk of the quarter sessions court. It is again argued that Sec. 109 of The Borough Code (53 PS §12230) requires the ordinance to be advertised in accordance with the provisions of that section. That section provides that *notices* shall be "published in a newspaper of general circulation published within the limits of the borough affected, or if none is published therein, then in a newspaper of general circulation of the county or adjacent county circulating in such borough . . . .." As hereinbefore stated,

Sec. 109 applies to *notices* and Sec. 1006, Subsection IV, sets forth the requirements for the publication of an *ordinance,* providing that it must be published "in one newspaper of general circulation in the borough." In this case the publication of the ordinance more than fulfilled the requirements of The Borough Code. Prior to the amendment of Sec. 1006 by the Legislature in 1947, the borough was required to publish ordinances *in one newspaper printed in the county.* The amendment of this section by the Act of 1947 provided for the publication of ordinances *in one newspaper of general circulation in the borough.* The 1947 amendment omitted the requirement that the newspaper must be printed in the county. If it was the intention of the Legislature that Sec. 109 should control the manner in which borough ordinances were to be published it would have been wholly unnecessary for the Legislature to have amended Sec. 1006 in the fashion in which it did so by the Act of 1947. It is to be presumed that the Legislature had no intention of adopting conflicting provisions in the same statute and it is further to be assumed that the Legislature did not intend either of the provisions with respect to advertising of ordinances or of notices to be mere surplusage. Every law shall be construed, if possible, to give effect to all of its provisions. Statutory Construction Act, 1937, May 28, P. L. 1019, Art. IV, Sec. 51, 46 PS §551; *Kerns et al. v. Kane et al.,* 363 Pa. 276, 69 A. 2d 388. In ascertaining the legislative intent it may be assumed that the Legislature intended the entire statute to be effective and certain. *Com. v. Stingel,* 156 Pa. Superior Ct. 359, 40 A. 2d 140. A construction which relegates some words in a statute to a position of surplusage is not permissible unless no other construction is reasonably possible. *Com. v. Hubbs (No. 1),* 137 Pa. Superior Ct. 229, 8 A. 2d 611. We, therefore, conclude

that Sec. 1006 of Art. X of The Borough Code of 1947, supra, was intended to provide that borough ordinances should be advertised "in one newspaper of general circulation in the borough" and Sec. 109, Art. I, of the same act, was intended to provide for the advertising of legal notices other than ordinances, which notices, by other provisions of The Borough Code, are required to be published "in one newspaper in the county."

The order of the court below is reversed and Ordinance No. 242 of the Borough of Lemoyne is hereby declared to be valid. Costs to be paid by the Township of East Pennsboro.