## Lower Allen Township Annexation

*William F. Martson,* for plaintiff.

*Addison M. Bowman, Jr.,* and *E. M. Blumenthal,* for defendant.

*Myers, Myers & Flower,* for Drexel Hill Land Co.

SHUGHART, P. J., May 17, 1955.—The Borough of New Cumberland filed the above annexation proceedings on October 30, 1954, to annex 125.6 acres of the

Township of Lower Allen which at that time was a second class township. Upon complaint made by Lower Allen Township and an aggrieved individual, a board of commissioners was appointed to make a study of the facts in the matter, as provided by the Act of July 20, 1953, P. L. 550, 53 PS §111 et seq.

After the appointment of the board the complaint of the individual against the annexation was withdrawn. Following a hearing, the commissioners filed a complete and comprehensive report on February 15, 1955. Their findings were generally favorable to the annexation.

On March 8, 1955, on application of counsel for the borough, a rule was issued on Lower Allen Township to show cause why the annexation should not be confirmed. On the same date, counsel for the township waived issuance of the rule and filed a counter-petition "in the nature of and in lieu of an answer."

Section 5 of the Act of 1953, supra, 53 PS §115 provides that after the commissioners have filed their report, "The court shall consider the findings of the board, together with any facts that may be submitted to it, and shall make an order either dismissing the proceedings or affirming the annexation."

There has been no request for a hearing before the court, but the matter being considered at issue on the pleadings, each side has submitted a brief and a brief has, likewise, been submitted by the owner of the land to be annexed.

From the report and the other papers, it appears that the area to be annexed was farmland at the time of annexation, but the owner contemplated building dwellings and creating a real estate development on the land. In setting forth the disadvantages of the annexation to the township as provided by section 4 of the act, the board stated that the annexation would reduce future revenues of the township by a substan-

tial but an unknown amount. It further stated that the cost of the services to be rendered by the township to the area would at least be equal to the increased revenue and, therefore, there would be no net loss to the township. Counsel for the township contends that the board erred in this finding.

It is contended that a witness before the board testified that he proposed to develop the annexed area by building homes thereon and that, therefore, there would be a very substantial loss in revenue to the township in the future, and that the net cost of the services to be rendered by the township to the area would be much less than the revenue derived and that, therefore, there would be a net loss to the township.

This whole matter involves a prophesy of future events and activities. Currently, there is no appreciable loss of revenue to the township. It appears from the findings that the township has no sanitary sewage disposal system; the borough, on the other hand, has such a system. Whether or not houses built in the area can be connected to a sanitary sewer system may well determine the number that are erected. Therefore, there may or may not be extensive building depending upon whether or not the annexation is approved. The cost to the township of a sewer system would be very substantial. This factor could not, therefore, become an important basis in determining if the action should be approved. It would appear that there is greater likelihood of the development of the area if the annexation were approved. The area in question is severed from the remainder of the township by a highway so that it can only be reached by traveling through New Cumberland, the annexing borough. For this reason undoubtedly sewage, both sanitary and storm, as well as all other services could be rendered to the area more easily and cheaply by the borough than by the township.

It is next contended that the boundaries of the area annexed are not laid out on a rational basis in that it did not follow natural boundaries. The board found that a small strip of land adjacent to the highway referred to above will be cut off from the rest of the township if the annexation is approved. The mere fact that there was a failure to include other land in the annexation which should have been included would serve as a very poor reason for refusing the annexation. We are without information as to the size of this "small strip" but it would seem that this alleged error could be corrected by future action of the municipalities involved.

The township presented no testimony before the court and notes of testimony of the hearing before the commissioners, if taken, were not filed. The court is in no position to reverse the findings of the board and the objections to the findings would have to be dismissed for this reason alone. Despite the fact that in our opinion these objections are not properly before us, we have examined them on their merits and find them without foundation.

Section 6 of the Act of 1953, 53 PS §116, provides that the ". . . annexation, if affirmed by the court, shall become effective as of the date of approval by the court, . . ." In the petition of the township for dismissal of the annexation proceedings it is averred that Lower Allen Township became a first class township on January 3, 1955, and, therefore, since the annexation proceedings followed the law applicable to annexation from a second class township, but not a township of the first class, the proceedings should be dismissed.

Nowhere in the proceedings, except in the final petition of the township to dismiss, does it appear that the classification of Lower Allen Township had been changed as a result of a referendum from that of sec-

ond to a township of the first class. The matter is not referred to in the report of the board nor are there any findings in respect thereto. Since the facts essential to establish this attack are not of record, we would be warranted in dismissing the objection on that ground. We would be reluctant, however, to dispose of this matter on a procedural point and will, therefore, determine the issue on its merits.

The annexation proceedings were filed in the court on October 30, 1954. The election at which the township became a township of the first class was held on November 2, 1954. The application to hold a referendum must have been made prior to October 30, 1954. See Act of July 24, 1941, P. L. 502, sec. 1, as amended, 53 PS §19092-207 (application must be made 90 days before election). The fact that the referendum was ordered by the court before the annexation ordinance was enacted does not invalidate the ordinance: Lemoyne Borough Annexation Case, 176 Pa. Superior Ct. 38, 43, 44. The First Class Township Code of May 27, 1949, P. L. 1955, sec. 2, 53 PS §19092-208, provides that when the electorate vote in favor of a township becoming a township of the first class, "the government of the township . . . shall be organized and become operative on the first Monday of January next succeeding such election. . . ."

Under the Act of 1953 the annexation does not become effective until approval by the court. When the ordinance was adopted Lower Allen Township was a township of the second class but became a township of the first class on January 3, 1955. The proceedings followed the procedure for annexation from a township of the second class; it is obvious that the procedure employed would not comply with the law relating to annexations from a first class township: Act of July 2, 1937, P. L. 2803, as amended, 53 PS §19092-3601.

While the Act of 1953 provides that the annexation

becomes effective only upon approval there is nothing to indicate that legality of the annexation ordinance must be determined as of that date. In the case of Lancaster City Annexation Case (no. 2), 374 Pa. 537, the court said at page 541: "The legality of an ordinance is determined as of the date of its enactment, and as the passage of the annexation ordinance predated the change of the township's status, its validity remained unimpaired." We find nothing in the Act of 1953, which was enacted after the decision in the above case, to overrule the above statement of the court.

Since the ordinance was passed while Lower Allen was a second class township the annexation had to follow the procedure for annexation from a township of that class and it is not denied that such took place. As was said in the Lancaster City Annexation Case (no. 2), supra, at page 541: "The proceedings (annexation) here under consideration were initiated prior to the promotion of Manheim Township to first class status. Certain rights, therefore, had accrued to the taxable inhabitants and owners of the territory annexed. And under the provisions of the Act of May 27, 1949, P. L. 1955, Section 1 (53 P. S. 19092-108) those rights cannot be divested: '*Whenever any township of the second class is designated a township of the first class . . . all liabilities incurred, rights accrued or vested, obligations issued or contracted, and all suits and prosecutions pending or to be instituted to enforce any right or penalty accrued or punish any offense committed, prior to such change of class, and all ordinances, resolutions, rules and regulations shall continue with the same force and effect as if no such change had been made.*' " (Italics theirs.)

It is clear that this ordinance, valid at the time of its passage, did not become invalid because of a subsequent change in the classification of the township from which the land was annexed.

This conclusion does no violence to the provisions of the Act of 1953. That act does not provide for the date as of which the legality of an annexation ordinance shall be determined, but provides that if the ordinance is upheld the annexation shall be effective as of the date of approval. This does make a change in the law as to the effective date of annexations. Under the prior law the annexations were effective upon the filing of the proceedings in the Court of Quarter Sessions and giving notice thereof: Act of July 10, 1947, P. L. 1621, sec. 5, 53 PS §12462. Such is the case even when the ordinance is subsequently invalidated. In speaking of an annexation ordinance that was held to be invalid by the court, Judge Reno said in the case of Irwin Borough Annexation Case (no. 2), 165 Pa. Superior Ct. 134, 136: "It is conceded that the subsequent proceedings, the complaint and the decisions of the quarter sessions and this Court, did not supersede or postpone the operation of the ordinance. So far as the borough's affairs are concerned the ordinance will remain in effect until the decisions have been reviewed by the Supreme Court or the time for applying for an allocatur shall have expired." In that case from the date of filing in the court until it was too late to appeal to the Supreme Court from the decision invalidating the ordinance, the land was a part of the borough, thereafter it returned once more to the township.

A review of the prior law points to the reason behind the change. Under the prior law, when the annexation became effective upon filing, there were situations such as occurred in the Irwin Borough Annexation Cases (no. 1 and no. 2), 165 Pa. Superior Ct. 119 and 134, where a parcel of land became a part of a borough and so remained until a final decision of an appellate court invalidated the annexation proceedings, when it again returned to become a part of the township from which it was taken. The difficulty of adjusting and readjust-

ing fiscal and governmental matters in the annexed territory is readily apparent. So that there would be no change in case the annexation was disallowed and only one change if it were approved, the present statute wisely provides that the annexation shall be effective when approved.

The change in the statute applies only to the date upon which an annexation becomes operative under an ordinance. No change has been made in the law as set forth in the cases holding that the legality of the ordinance is determined as of the date of enactment. See Lancaster City Annexation Case (no. 2), 374 Pa., supra, 537, 541: Lemoyne Borough Annexation Case, 176 Pa., Superior Ct., supra, 38, 45.

The present ordinance, valid when enacted, was not invalidated by the subsequent change in the classification of the township.

And now, May 17, 1955, at 2 p.m., after careful consideration of the findings of the board of commissioners, and of the objections and exceptions to the proceedings by Lower Allen Township, the said annexation be and is hereby affirmed.