**International Association of Firefighters, Johnstown Local No. 463 v. Johnstown City**

*Richard J. Green, Jr.*, for plaintiffs.

*James R. DiFrancesco, Solicitor*, for defendant.

McDONALD, P. J., March 10, 1972.—This matter is before the court by agreement of the parties upon petition under the Uniform Declaratory Judgments Act. No question of fact is involved, and it has been

submitted on questions of law after argument and the filing of briefs.

Plaintiffs are the International Association of Fire-fighters, Johnstown Local No. 463, by its trustees ad litem, and two former members of the Johnstown City Fire Department, Kenneth W. Koskal and Ronald J. Blasko. Defendant (herein referred to as city) is the City of Johnstown, governed by its council.

City has a paid fire department, organized under the Act of June 23, 1931, P. L. 932, art. XXI, sec. 2101, as amended, 53 PS §37101. On June 17, 1948, by ordinance 2752, the City created the Firemen's Pension Fund under the Act of June 23, 1931, art. XLIII, sec. 4230, as amended, 53 PS §39320. Section 4321 of this act provides, inter alia, the conditions of eligibility for retirement.

On December 31, 1971, effective January 1, 1972, the department force was reduced from its number of 93 to 81 members, for reasons of economy, under the Act of May 31, 1933, P. L. 1108, sec. 11, 53 PS §39871, which provides, as follows:

"If for reasons of economy, or other reasons, it shall be deemed necessary by any city to reduce the number of paid members of any fire department, or the number of fire alarm operators or fire box inspectors in the bureau of electricity, then such city shall follow the following procedure:

"First. If there are any paid firemen, fire alarm operators or fire box inspectors eligible for retirement under the terms of any pension fund, then such reduction in numbers shall be made by retirement on pension of all the oldest in age and service.

"Second. If the number of paid firemen, fire alarm operators and fire box inspectors eligible for retirement under the pension fund of said city, if any, is insufficient to effect the reduction in number desired by said

city, or if there is no eligible person for retirement, or if no pension fund exists in said city, then the reduction shall be effected by suspending the last man or men, including probationers, that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last man appointed, all recent appointees until such reduction shall have been accomplished. Whenever such fire department or fire alarm operators or fire box inspectors in the bureau of electricity shall again be increased in numbers to the strength existing prior to such reduction of members, or if any vacancies occur, the employees suspended under the terms of this act shall be reinstated to their former class before any new appointees are appointed."

The reduction was accomplished by retirement of the chief, who had reached the mandatory retirement age of 65 years, 10 firemen who were eligible for retirement by age and service under the Firemen's Pension Fund provisions, and the two plaintiffs, Koskal and Blasko, who were the most recent appointees to the force. At the time of the reduction, there were four other members of the force eligible for retirement. These were assistant chiefs of the department.

Plaintiffs contend the city was required, by section 11 of the Act of May 31, 1933, to first retire those eligible for retirement, beginning with the oldest in age and service, before suspending the most recent appointees. Thus, if the four assistant fire chiefs are considered within the provisions of section 11, there was no necessity to suspend plaintiffs to effect the reduction.

The city contends the Act of May 31, 1933, sec. 1, excludes the supervisory personnel referred to as "chief" and "assistant chiefs" (section 1 refers to

"deputy chiefs," but it is agreed they are the same position) from the Firemen's Civil Service Act.

We must decide whether the Act of 1933 excludes the chief and assistant chiefs from operation of its provisions, and in particular section 11.

Plaintiffs argue section 11 is "clear, precise and unambiguous" and, therefore, "all paid members" of the department, oldest in age and service and eligible for retirement, must first be retired to effect the reduction. They argue this section is separate and distinct from the other provisions of the act, and is a departure from the usual provisions relating to appointments, suspension, removal and discharge under civil service procedures.

City relies on section 1 to support its position. This section provides, 53 PS §39861:

"On and after the first day of July, one thousand nine hundred and thirty-three, appointments to, and promotions in, all paid fire departments or as fire alarm operators and fire box inspectors in the bureaus of electricity of cities of the second and the third class shall be made according to qualifications and fitness, to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided. On and after said date, no person shall be reinstated, appointed, promoted, demoted or discharged as a paid member of any fire department (except the chief and deputy chiefs), regardless of rank or position, in any fire department or as a fire alarm operator or fire box inspector in the bureau of electricity, in any city of the second or third class, in any manner or by any means other than those prescribed in this act."

It argues the exclusion of the chief and deputy chiefs from the operation of the act operates as to all sections thereof.

Some historical information is necessary to understand the countervailing contentions. By Act of June 23, 1931, P. L. 932, art. XLIV, sec. 4401, as amended, 53 PS §39401, which is part of The Third Class City Law, a comprehensive civil service system was provided in certain departments of third class cities, including the fire department. Section 4408, 53 PS §39408, provided, inter alia, for economy reductions, by removing first those members last appointed, and with regard to seniority. The Act of 1933 removed the fire department from governance of the Act of 1931, and created a separate civil service system for that department. In doing so, we think it significant, since it was not provided in the Act of 1931, that, as indicated in section 1 above, the chief and deputy chiefs were specifically excepted from the provisions of the act providing for reinstatement, appointment, promotions, demotions or discharge. In the former act, such a distinction was not made, and it is entirely likely in its absence these positions may very well have come under the provisions of that act.

The purpose of civil service is to provide a procedure whereby the best qualified persons may be obtained for particular jobs, and to assure permanency in their employment. The retirement, or pension, provisions were designed as an additional inducement, long before private retirement plans were common, to enter a career in public service, and additionally, in the case of firemen and policemen, to perform a very dangerous service. Civil service long preceded mandatory retirement programs for firemen: Act of June 28, 1947, P. L. 1032, sec. 1; Firemen's Pension Fund v. City of Harrisburg, 362 Pa. 432. With this backdrop, it is evident the legislature, by its exception in section 1, has distinguished between positions which are acquired by examination and competition and those which are

appointive. The sole purpose of civil service is to insulate those who have acquired their positions competitively in compliance with civil service standards, from removal, suspension and discharge, without cause.

It is clear the chief and deputy chiefs (assistant chiefs) do not enjoy the salutary protection of the Act of 1933, nor are they subject to its competitive features. They may be appointed without regard to examination (section 3) or eligibility for appointment (section 6). Their status is an unstable one, and they may be removed, discharged or reduced in rank or pay without cause, since it is clear section 10 of the act offers them no protection: Erb v. Allentown, 343 Pa. 622.

A reading of section 11 lays to rest plaintiffs' argument that all "paid members" of the department are covered by it; ergo, the chief and assistant chiefs, being paid members, are subject to its provisions. The second paragraph of the section provides the reduction in numbers shall be accomplished by retirement first of ". . . paid firemen, fire alarm operators or fire box inspectors . . ." It is noteworthy that paragraphs 2 and 3 of the section provide the manner in which the reduction will be made without reference to "paid members of any fire department." Why the distinction of specific classifications of those in the department if all positions from top to bottom were to be included? We think it is because the reduction is to be made from the classification of employes other than the chief and assistant chiefs specifically excepted in section 1 of the act. This position is strengthened by a reading of section 16, in effect a "grandfather clause" (not protecting chiefs and assistant chiefs), which, as in the second paragraph of section 11, refers to the identical nomenclature of "paid firemen, fire alarm operators and fire box inspectors . . ."

It can hardly be disputed a chief and the assistant chiefs are paid members of a paid fire department. The first paragraph of section 11, in referring to "paid members," includes them only for the purpose of ascertaining the total number of the department force, since their salaries would have to be considered in any economy measure which requires a reduction in number. Thus, the reference to paid members in this paragraph has a special purpose. The manner or method by which the reduction must be made is set forth in the second and third paragraphs, and in neither of these is there a reference to "paid members."

We think there is another reason why the legislature, in enacting this statute, used the phrase, "paid members of any fire department," (it appears in sections 1 and 11). Prior to the Act of 1933, paid members of volunteer departments were not covered: Act of May 3, 1917, P. L. 138, sec. 1, repealed by the Act of June 23, 1931, P. L. 932, sec. 4701. However, in interpreting this phrase, the Superior Court held that "paid members of any fire department" was intended to cover also paid members of a volunteer department: Lehman v. Hazelton, et al., 135 Pa. Superior Ct. 410 (1939). Thus, we conclude the expression, while not having the significance argued for by plaintiffs, was intended only to indicate that paid members of both voluntary and paid departments were covered. In our view, the intent of the legislature, by restricting the reduction to "paid firemen, fire alarm operators or fire box inspectors" is clearly related to the exception of a chief and assistant chiefs in section 1.

In Erb v. Allentown, supra, the Supreme Court held that one designated as "Superintendent of Fire" was, in fact, "head of a fire department," even though he was not called "Chief." In ruling on the question of whether he was within the protection of the Act of

1933, it stated, at page 624: "Therefore, plaintiff falls within the meaning of the word 'chief' as used in the statute, and is *excepted from its provisions*." (Italics supplied.) We consider Erb to be dispositive of the issue here, since it is implicit in the decision the plaintiff in that case, who was head of the department and, in effect, "chief," was excepted from the *provisions* of the act.

It would be contrary to the rules of statutory construction to hold, as plaintiffs urge, that a chief and assistant chiefs are excluded from the subject of the act; i.e., civil service status, but notwithstanding, included for the purpose of section 11 only. If this position prevails, there would be an intrinsic conflict between sections 1 and 11. This position overlooks the presumption the legislature had no intention to adopt conflicting provisions in the same statute: In re Lemoyne Borough Annexation Case, 176 Pa. Superior Ct. 38. Statutes must be given a reasonable construction. In ascertaining the intention of the legislature, as we do here, we must presume it did not intend an absurd or unreasonable result. To say there is a particular general exclusion in the act, and then find a specific inclusion, is contradictory and would only lead to an absurd and unreasonable result. We cannot find such a result in this act whose provisions, at least as to the issue here, are clear and unambiguous.

Accordingly, judgment will be entered for defendant.

## DECREE

Now, March 10, 1972, after argument and upon consideration of the record and briefs, it is hereby adjudged and decreed the reduction in numbers of the force of the Fire Department of the City of Johnstown was made in accordance with law, therefore, judg-

574

ment is entered in favor of defendant, City of Johnstown, and against International Association of Firefighters, Johnstown Local No. 463, by George Wehner and George Peterson, Trustees ad Litem; Kenneth W. Koskal and Ronald J. Blasko.