## In re Rodgers

*Evan Lloyd,* for petitioner.
*Bruce Ledewitz,* for respondent.

ROSS, E., *J.*, March 31, 1980—This matter is before the court en banc on exceptions filed by respondent, Timothy Rodgers, to an order of court entered January 16, 1980, wherein the court after hearing dismissed a petition for review of a deter-

mination by a mental health officer entered December 12, 1979, resulting in respondent's commitment to St. Francis Hospital for a period not to exceed 20 days pursuant to section 303 of the Mental Health Procedures Act of July 9, 1976, P.L. 817, 50 P.S. §7303.

The exceptions allege the court committed error in ordering respondent's commitment despite clear evidence of respondent's senility as that term is understood in section 102 of the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7102.

Did the court err in dismissing respondent's petition for review?

Section 102 of the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7102, provides in part: "Persons who are mentally retarded, senile, alcoholic or drug dependent shall receive mental health treatment only if they are also diagnosed as mentally ill, but these conditions of themselves shall not be deemed to constitute mental illness."

Section 301 of the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7301, provides:

"Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself."

At the review hearing on January 16, 1980, the court heard the testimony of two psychiatrists.

Dr. William E. Mooney testified that respondent suffers from a recognizable mental disability

known as an organic brain syndrome of a psychotic degree. Respondent's condition, according to Dr. Mooney, is caused by atrophy of the cerebral cortex. The cause of the atrophy is not known. Respondent's disease is not reversible nor treatable in the sense of potential recovery.

Dr. Mooney testified that organic brain syndrome of a psychotic degree is a disturbance of intellectual and cognizance functions generally involving memory disturbances such as poor judgment, difficulty in comprehension and inability to think through to rational conclusions.

While the term senility has no actual medical definition, Dr. Mooney's opinion of the word is that its meaning is relatively minor changes due to aging.

Testimony was also adduced from Dr. Earl J. Brink who categorized Mr. Rodgers as having organic brain syndrome of psychotic proportions. In his opinion, the condition in this case is related to generalized vascular disease combined with arteriosclerosis.

In Dr. Brink's opinion, the social understanding of senility is synonymous with aging process and its effects on brain function and personality. Dr. Brink testified that in a social sense respondent is senile but that the medical diagnosis is organic brain syndrome. In his opinion, an examination would show the changes evidenced by respondent are based on arteriosclerosis rather than senility. According to Dr. Brink the state of respondent's organic brain syndrome is psychotic because respondent cannot meet the realities of life.

In support of the exceptions, respondent at the oral argument and in the brief submitted to the court contends the exclusion of senility in section

102 of the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7102, was intended by the legislature to include organic brain syndrome with psychosis. Respondent argues any other result would not serve the purpose of the statute since the medical testimony establishes that organic brain syndrome without psychosis is not a severe mental disability. Thus, there would be no reason to exclude it and the only purpose of the exclusion would be to indicate that organic brain syndrome with psychosis was not within the purview of the act.

Respondent has further argued that since his condition will not improve with treatment the legislature did not intend to include it within the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7101 et seq.

Respondent relies on the rule of statutory construction that "no portion of a statute is to be construed as surplusage. . . .": Lemoyne Borough Annexation Case, 176 Pa. Superior Ct. 38, 107 A. 2d 149 (1954).

While respondent's argument based on the rules of statutory construction is true, other construction rules must also be noted.

Section 1903 of the Act of November 25, 1970, P.L. 707, 1 Pa.C.S.A. §1903, provides: "(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition."

Section 1921 of the Act of November 25, 1970, supra, 1 Pa.C.S.A. §1921, provides:

94

"(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

"(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: (1) The occasion and necessity for the statute. (2) The circumstances under which it was enacted. (3) The mischief to be remedied. (4) The object to be attained. (5) The former law, if any, including other statutes upon the same or similar subjects. (6) The consequences of a particular interpretation. (7) The contemporaneous legislative history. (8) Legislative and administrative interpretations of such statute."

Unfortunately, the legislature did not define the term senility in the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7101 et seq., and this court must now attempt to interpret the meaning of that word in the context of the statute.

In construing the term senility, in the absence of statutory definition, the court first looks toward the common understanding of the word. The dictionary definition of the term is "[m]ental and physical deterioration with old age." American Heritage Dictionary, American Heritage Publishing Co., Inc., New York, New York (1975).

The testimony established that senility as commonly understood evidences poor judgment, memory disturbances and difficulty in comprehension. The term senility often brings to mind the elderly

person who has become moody, cranky and even eccentric. It is the court's opinion that it was the legislature's intent that such persons should not be committed involuntarily on account of those personality changes due to aging which are not tantamount to a severe mental disability.

Such a view is consistent with the purpose set forth in section 102, Mental Health Procedures Act of July 9, 1976, supra, 50 P.S.§7102, which is not only to insure treatment but to insure that only those persons suffering from severe mental disabilities will be committed against their will. Clearly, the stated purpose is to prevent the institutionalization of inconvenient persons to "get rid" of them. Such practices have become so repugnant to society as an affront to human dignity that the legislature acted to prevent the placement of those who are difficult or eccentric into institutions. The legislature has set a policy that prevents each of us from shirking our natural responsibilities one to the other merely because of difficult situations.

If respondent suffered from senility as that word is commonly understood, the benign changes of age, the slight memory lapses, the increasing eccentricity or hardening of attitudes without a loss of ability to function as to reality, this court would be in agreement that commitment would not only be improper but would be the subject of the specific exclusion in the Mental Health Procedures Act of July 9, 1976, sec. 102, 50 P.S. §7102. It is clear that such senility poses neither a clear and present danger to its subject or to others. The mislaid glasses can be found. The mildly eccentric or moody behavior hurts no one.

However, no doubt exists and all parties agree that Mr. Rodgers suffers from organic brain syndrome with psychosis. He suffers not from *minor*

changes due to aging, but from severe disorders of the brain as a result of either arteriosclerosis or atrophy of the cortex. He is in a life-threatening situation and if not cared for poses a clear danger to himself.

It is the court's opinion that, because respondent is the victim of an organic disease affecting his brain to such an extent that psychosis has resulted, he suffers from a mental illness. It is not senility as we understand it that allows this commitment but rather a mental illness that is severe enough to be construed as a severe mental disability.

While it is recognized that Mr. Rodger's disease cannot be cured by treatment, the commitment is still appropriate. Respondent would have the statute interpreted in such a manner as to allow commitment only when psychiatric treatment presents a potential for total recovery.

Section 104 of the Mental Health Procedures Act of July 9, 1976, supra, 50 P.S. §7104, provides:

"Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness. It shall be provided to all persons in treatment who are subject to this act. It may include inpatient treatment, partial hospitalization, or outpatient treatment. Adequate inpatient treatment shall include such accommodations, diet, heat, light, sanitary facilities, clothing, recreation, education and medical care as are necessary to maintain decent, safe and healthful living conditions.

"Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a per-

son from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery."

Although treatment in this case does not leave the hope of recovery, it certainly can alleviate the pain and distress of respondent. The treatment provided will maintain decent, healthful and safe living conditions and will remove respondent from the life-threatening situation that has been created due to his condition and may even ameliorate or improve some of the functions now severely impaired.

This court cannot agree that the legislature in using the term senility made no distinction between organic brain syndrome with psychosis and that without psychosis. Rather in excluding senility the legislature was using the word as it is commonly understood, i.e., senility without psychosis. It was not excluding senility with psychosis. The common meaning can be given in a way that is consistent with the statutory policy and purpose. The interpretation given today will continue to prohibit institutionalization of those who suffer the minor changes of age but will protect those whose lives are threatened because they are a danger to themselves.

The exceptions will be dismissed.

## ORDER

And now, March 31, 1980, after argument on the exceptions of respondent, Timothy Rodgers, to the order of court entered January 16, 1980, it is ordered, adjudged and decreed that the exceptions are dismissed.